IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
ANDERSON/GREENWOOD DIVISION

| | |
|---|---|
| Betty Land; and Michelle Stephanie Brown, as Personal Representative of the Estate of Gary F. Land, </br></br>       Plaintiffs, </br></br> v. </br></br> Green Tree Servicing, LLC; Five Brothers Mortgage Company Services and Securing, Inc.; and John Doe, </br></br>       Defendants. | C/A No. 8:14-1165-TMC </br></br> **ORDER** |

This matter is before the court on a motion to dismiss filed by Defendant Green Tree Servicing, LLC ("Green Tree"). (ECF No. 17). Plaintiffs Betty Land and Michelle Stephanie Brown, as Personal Representative of the Estate of Gary F. Land, ("Plaintiffs") filed a response opposing the motion (ECF No. 20) and Green Tree filed a Reply (ECF No. 21).

**I. Background/Procedural History**

Plaintiff Betty Land and her husband, Gary Land, owned property at 308 Mountain View in Westminister, South Carolina, which in 2012 was subject to a mortgage held by the Bank of New York Mellon ("Bank"). (ECF No. 12 ¶ 13, Am. Compl. ¶ 13). In August 2012, the Bank began foreclosure proceedings against the Lands. *Id.* at ¶ 14. The Lands counterclaimed for wrongful foreclosure. *Id.* at 15. In October 2012, the Lands took out a second mortgage and, with the proceeds, brought their first mortgage with the Bank current. Id. at ¶ 20.

Defendant Green Tree became the loan servicer for the Bank of New York on September 16, 2012. (Am. Compl. ¶ 16). Defendant Five Brothers acted as an agent for Green Tree in regard to loans in Oconee county. *Id.* at ¶ 17. In February 2013, the Lands and the Bank agreed

to execute a settlement to dismiss the foreclosure as moot. In March 2013, the Lands executed a settlement ("Release") and their counsel sent the settlement paperwork to Green Tree. *Id.* at 23. Green Tree states the Release became effective at least by April 26, 2013. (ECF No. 17-1 at 6).

Plaintiffs allege that Gary Land was in poor health during this time and the Lands' attorney asked Green Tree not to contact the Lands because this would cause Gary stress and would be detrimental to his health. (Am. Compl. ¶¶ 25, 27, 29). Plaintiffs allege, however, that Green Tree continued to send the Lands threatening letters regarding the foreclosure, and Green Tree would regularly drive by the Lands' property, park, and take pictures. *Id.* at ¶¶ 26, 32.

On April 4, 2013, a representative of Green Tree was parked near the Lands' home taking pictures when Gary Land confronted him and was told that his home was being foreclosed upon by Green Tree. *Id.* at ¶¶ 35-36. The Lands' attorney contacted Green Tree and asked if Green Tree was going to honor the Release and informed Green Tree that Gary Land had a heart problem and his doctor had advised him to reduce his stress. *Id.* at ¶ 38. Green Tree confirmed that it planned to execute the Release shortly. *Id.* at ¶ 39.

On April 21, 2013, another Green Tree representative was stopped in front of the Lands' property taking pictures when Gary Land confronted him and again Land was informed that the property was being foreclosed and that the representative needed information about who was on the property so that eviction proceedings could be started. (Am. Compl. at ¶¶ 42-44). Gary Land was very upset by the conversation and within hours had a massive heart attack and died. *Id.* at ¶ 45.

Following Gary's death, Betty Land has continued making the mortgage payments, but alleges that Green Tree has failed to timely credit her account, provide her access to her online account, forced her to acquire expensive insurance, and refused her request that all contact be made through her attorney. *Id.* at ¶¶ 47-48. Plaintiffs then filed this action alleging claims for

2

survival, wrongful death, negligence, negligent supervision, violations of the fair Debt Collections Practices Act, 15 U.S.C. §§ , ("FDCPA"), breach of contract, and invasion of privacy. (*Id.* at 6-12).

## II. Applicable Law

When considering a 12(b)(6) motion to dismiss, the court must accept as true the facts alleged in the complaint and view them in a light most favorable to the plaintiff. *Ostrzenski v. Seigel*, 177 F.3d 245, 251 (4th Cir. 1999). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) (*quoting Twombly,* 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Although "a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations," a pleading that merely offers "labels and conclusions," or "a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. Likewise, "a complaint [will not] suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancements.'" *Iqbal*, 129 S.Ct. at 1949 (*quoting Twombly*, 550 U.S. at 557).

In analyzing a motion under Rule 12(b)(6), the Court also considers Fed.R.Civ.P. 8(a)(2), which requires a pleading to contain a "short and plain statement of the claim showing that the pleader is entitled to relief." To satisfy the minimal requirements of Rule 8(a)(2), a complaint must contain facts sufficient to "state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. These cases make clear that Rule 8 "requires a 'showing,' rather than a blanket assertion, of entitlement to relief." *Id.* at 556 n. 3 (quoting Fed.R.Civ.P. 8(a)(2)). This showing must consist of at least "enough facts to state a claim to relief that is plausible on its face." *Id.* at

570.[1]

## III. Discussion

### A. Release

In its motion to dismiss, Defendant Green Tree contends that Plaintiffs waived the claims asserted in the Amended Complaint when they entered into the Release with Green Tree. Defendant Green Tree contends that by relying on the date on which the credit was applied as the effective date of the Release, the parties intended to release all claims arising out of or relating to the foreclosure matters. And because Plaintiffs' claims arise out of and relate to the foreclosure, they are barred by the Release.  Plaintiffs, however, contend that the Release do not bar this action because the Release was limited and entered into on March 13, 2013, and the activity giving rise to the claims alleged in the Amended Complaint occurred in April 2013 and later.

The Release provides, in pertinent part:

> Upon application of the above referenced "credit" the Land Defendants [,] their heirs, agents, representatives, successors and assigns, hereby release, discharge, waive and acquit Plaintiff, their employees, officers, members, directors, partners, affiliates, parents, subsidiaries or anyone in privity with them, its heirs, agents, representatives, successors and assigns, from and against any and all damages, claims, demands, actions, suit (at law or in equity), judgments, and costs arising out of or related to any matters referenced in the pleadings or any matters that could have been referenced in the pleadings in the above-captioned action and assigns, from and against any and all damages, claims, demands, actions, suits (at law or in equity), judgments, and costs arising out of or related to any matters referenced in the pleadings or any matters that could have been referenced in the pleadings in the above-captioned action.

---

[1]Ordinarily, in resolving a motion under Rule 12(b)(6), if a court considers material outside of the pleadings, "the motion must be treated as one for summary judgment under Rule 56," in which case "[a]ll parties must be given a reasonable opportunity to present all the material that is pertinent to the motion." Fed.R.Civ.P. 12(d). However, the court may properly consider documents "attached to the complaint, as well those attached to the motion to dismiss, so long as they are integral to the complaint and authentic." *Philips v. Pitt Cnty. Mem. Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009) (citations omitted).  Accordingly, the court finds that the mortgage and Release, which are attached to the motion to dismiss, are integral to the amended Complaint, and the court has considered these documents in ruling on this motion to dismiss.

> Moreover, upon receipt of the above referenced "credit" the Land Defendants, by and through their duly authorized counsel[,] agree to execute a Stipulation of Dismissal of all claims against Plaintiff with prejudice.

(ECF No. 7-7 at 2-3 ¶ 3, Release at 2-3 ¶ 3).

A release is a contract and the scope of a release is determined by its terms. *Gardner v. City of Columbia Police Dep't*, 57 S.E.2d 308, 309 (S.C. 1950); *Bowers v. Dep't of Transp.*, 600 S.E.2d 543 (S.C. Ct.App. 2004). Moreover, the rules of contract should be used to determine what the parties intended. *Ecclesiastes Prod. Ministries v. Outparcel Assocs., LLC*, 649 S.E.2d 494, 501 (S.C. Ct.App. 2007). In construing a contract, the primary objective is to ascertain and give effect to the intention of the parties." *Southern Atl. Fin. Servs., Inc. v. Middleton*, 562 S.E.2d 482, 484-85 (S.C. Ct.App. 2002).

Generally, a release will "ordinarily release all present, but not future, claims." 29 Williston on Contracts § 73:10 (4th ed.). The general rule is that "[a] release ordinarily covers only such matters as may fairly be said to have been within the contemplation of the parties at the time of its execution." *See Campbell v. Bi-Lo, Inc.*, 392 S.E.2d 477, 480 (S.C. Ct.App.1990) (stating a release must be read as a whole); *Thomas-McCain, Inc. v. Siter*, 232 S.E .2d 728, 729 (S.C. 1977) ("Where the agreement in question is a written contract, the parties' intention must be gathered from the contents of the entire agreement and not from any particular clause thereof.").

Here, the Release in this case releases claims arising out of or related to any matters that were referenced in the first action or could have been referenced in the first action. Including claims that could have been referenced in the first action does not evidence an intent to include future claims. Defendants argue the Release should be interpreted to encompass future claims. But to do so would require the court to consider materials outside of the pleadings which the court declines to do at this time. As the court cannot at this time determine the proper scope of the Release, the court denies Green Tree's motion to dismiss based upon the Release.

### B. Negligence Claim

In their Amended Complaint, Plaintiffs allege that Defendants owed them a duty to act as "reasonable and prudent loan servicing companies and agents." (Am. Compl. ¶ 62). Plaintiffs specifically allege that:

> Both before and after the death of Gary Land Green Tree, Five Brothers and John Doe(s) breached their duty and were negligent, grossly negligent, and reckless in the following ways:
>
> a. In failing to communicate with the Lands through the Lands' attorney after being instructed not to contact the Lands directly;
>
> b. In failing to properly instruct, train, and supervise their representatives not to threaten the Lands with eviction and foreclosure;
>
> c. In failing to avoid direct contact with the Lands and going out to the Lands' property;
>
> d. In failing to confirm the status of any foreclosure claim pending against the Lands in April of 2013;
>
> e. In misrepresenting their intention to foreclose upon the Lands' property and evict the Lands from their home;
>
> f. In continuing to harass Betty Land after the death of her husband;
>
> g. In misstating the payment amount to Betty Land;
>
> h. In wrongfully charging Betty Land for force placed home owners insurance;
>
> I. In denying Betty Land access to the Green Tree web site so she could determine the amount of her payment;
>
> j. In failing to act as a reasonable person under the circumstances then and there prevailing; and
>
> k. In making false representations that the loan was delinquent.

(Am. Compl. ¶ 63). Defendant Green Tree contends that a mortgage servicer does not owe a duty to a borrower under South Carolina tort law and, therefore, the negligence claim should be dismissed.

To establish a negligence claim, a plaintiff must establish: 1) a duty of care owed by the defendant to the plaintiff; 2) a breach of that duty by a negligent act or omission; and 3) damage proximately resulting from the breach of duty. *Rickborn v. Liberty Life Ins. Co.*, 468 S.E.2d 292, 298 (S.C. 1996). The South Carolina Supreme Court has held that a duty is generally defined as "the obligation to conform to a particular standard of conduct toward another," *Hubbard v. Taylor*, 529 S.E.2d 549, 552 (S.C. 2000)(internal quotation omitted). In order for negligence liability to attach, the parties must have a relationship recognized by law as the foundation of a duty of care. *Ravan v. Greenville County*, 434 S.E.2d 296 (S.C. Ct. App.1993). An affirmative legal duty exists only if created by statute, contract, relationship, status, property interest, or some other special circumstance. *Carson v. Adgar*, 486 S.E.2d 3 (S.C. 1997). In the absence of a duty to prevent an injury, foreseeability of that injury is an insufficient basis on which to rest liability. *South Carolina Ports Authority v. Booz-Allen & Hamilton*, 346 S.E.2d 324 (S.C. 1986), citing Carson v. Adgar, 326 S.C. 212, 486 S.E.2d 3 (1997)). A breach of a duty arising independently of any contract duties between the parties . . . may support a tort action." *Tommy L. Griffin Plumbing & Heating Co. v. Jordan, Jones & Goulding, Inc.,* 463 S.E.2d 85, 88 (S.C. 1995) (citation omitted). "When . . . there is a special relationship between the alleged tortfeasor and the injured party not arising in contract, the breach of that duty of care will support a tort action." *Id.* (citations omitted).

Defendant Green Tree cites *Weber v. Bank of Am.*, C/A No. 13-cv-01999-JFA, 2013 WL 4820446 (D.S.C. Sept. 10, 2013), and *Toney v. LaSalle Bank Nat. Ass'n*, 896 F. Supp. 2d 455 (D.S.C. 2012), for the proposition that a mortgage servicer does not have a duty of care to a debtor. In *Weber*, citing *Regions Bank v. Schmauch*, 354 S.C. 648 (S.C. Ct.App. 2003), the court held that "a bank in South Carolina does not owe a special duty of care to its customers, unless perhaps certain circumstances establish that special duty." *Weber*, 2013 WL 4820446, * 4. In

7

*Toney*, again citing Regions Bank, the court held that "[i]n South Carolina, a bank does not owe a customers a "special duty of care" based purely on his or her status as a customer." *Toney*, 896 F.Supp2d at 480. Plaintiffs have failed to allege sufficient special circumstances creating a fiduciary relationship so as to create a duty. *See Meyer v. Vantium Capital, Inc.*, C/A No. WDQ-14-00032, 2014 WL 4267626 (D.Md. Aug. 27, 2014). Instead, Plaintiffs contend that their negligence claim is based upon conduct outside the terms of the contract.

The parties have not provided, and the court has not found, a South Carolina case directly on point. However, in *Citizens & S. Nati'l Bank of S.C. v. Lanford*, 313 S.C. 540, 545 (S.C. 1994), the South Carolina Supreme Court held a bank did not have a duty to tell the guarantor of a loan that his liability was for the entire loan amount. The court explained that "[t]he law does not impose a duty on the bank to explain to an individual what [she] could learn from simply reading the document." Similarly, in *Regions Bank*, 354 S.C. at 668-70, the South Carolina Court of Appeals upheld the dismissal of a negligence claim against a bank because the appellant in that case had the opportunity to read the documents she signed, and in not doing so, failed to exercise reasonable diligence in protecting her own interests.

Plaintiffs cannot pursue a claim of negligence where their relationship with Green Tree is governed by an express contract, and where they have failed to allege that Green Tree owed them a duty separate and distinct form its obligations under that contract. Without citing to any authority, Plaintiffs merely allege that Defendants had a duty to act as reasonable and prudent loan servicing companies and agents. (Am. Compl. ¶ 62). However, this is not a duty that arises under South Carolina law. Furthermore, Plaintiffs' allegations relate to Defendants' duties, if at all, based upon their contract. Because Plaintiffs have failed to allege a separate and distinct legal duty giving rise to their negligence claim, the court concludes it should be dismissed.

### C. Negligent Supervision Claim

Defendant Green Tree contends that Plaintiffs have failed to allege facts to establish all of the elements of a negligent supervision claim.

In South Carolina, an employer may be liable for negligent supervision if the employee intentionally harms another when the employee: (1) is upon the premises of the employer, or is using a chattel of the employer, (2) the employer knows or has reason to know that he has the ability to control his employee, and (3) the employer knows or should know of the necessity and opportunity for exercising such control. *Degenhart v. Knights of Columbus,* 420 S.E.2d 495, 496 (S.C. 1992).

In circumstances where an employer knew or should have known that its employment of a specific person created an undue risk of harm to the public, a plaintiff may claim that the employer acted negligently in entrusting its employee with a tool that created an unreasonable risk of harm to the public. *James v. Kelly Trucking, Co.*, 661 S.E.2d 329, 330 (S.C.2008). Supervisory liability requires the court to focus specifically on what the employer knew or should have known about the specific conduct of the employee in question. *See also Rickborn v. Liberty Life Ins. Co.*, 468 S.E.2d 292, 302-03 (S.C. 1996) (finding defendant employer breached duty of care to plaintiff who was harmed by its employee/agent's negligent mishandling of insurance application because employer had notice of that employee/agent's prior negligent mishandling of insurance applications). "The standard, according to the Restatement section 317 comment c, is whether the employer knew the offending employee was 'in the habit of misconducting [himself] in a manner dangerous to others.' " *Doe v. ATC, Inc.*, 624 S.E.2d 447, 450 (S.C. Ct.App. 2005). There are no allegations that Defendant Green Tree knew or should have known its employees were committing any misconduct or of the necessity for exercising control over them. Accordingly, there are insufficient allegations regarding two key elements necessary to maintain

this cause of action and therefore it is dismissed.

### D. Invasion of Privacy Claim

Plaintiffs allege that Defendants intruded into their private affairs in blatant and shocking disregard of their rights. (Am. Compl.¶ 89).  Specifically, Plaintiffs allege that the observation and photographing of their home caused them "serious mental injury, stress and anxiety, serious physical injury, and humiliation."  (Am. Compl. ¶ 92).  Green Tree contends that the invasion of privacy claim fails because there was no unauthorized, substantial, or unreasonable intrusion.

In South Carolina, there are three separate and distinct causes of action for invasion of privacy: 1) wrongful appropriation of personality; 2) wrongful publicizing of private affairs; and 3) wrongful intrusion into private affairs.  *Swinton Creek Nursery v. Edisto Farm Credit*, 514 S.E.2d 126 (S.C. 1999).  It appears that a wrongful intrusion into another's private affairs is the type applicable to the facts of this case.

> A wrongful intrusion into private affairs, consists of the following elements:
>
> (1) Intrusion. An intrusion may consist of watching, spying, prying, besetting, overhearing, or other similar conduct. Whether there is an intrusion is to be decided on the facts of each case.
>
> (2) Into that which is private. The intrusion on the plaintiff must concern those aspects of himself, his home, his family, his personal relationships, and his communications which one normally expects will be free from exposure to the defendant.
>
> (3) Substantial and unreasonable enough to be legally cognizable. The law does not provide a remedy for every annoyance that occurs in everyday life. In order to constitute an invasion of privacy, the defendant's conduct must be of a nature that would cause mental injury to a person of ordinary feelings and intelligence in the same circumstances. The law protects normal sensibilities, not heightened sensitivity, however genuine. Whether the conduct in question meets this test is, in the first instance, a question of law for the court.
>
> (4) Intentional. The defendant's act or course of conduct must be intentional. For purposes of civil liability, an act is intentional if (1) it is done willingly; and either (2) the actor desires the result of his conduct, whatever the likelihood of that result happening; or (3) the actor knows or ought to know the result will follow from his conduct, whatever his desire may be as to that result.

*Snakenberg v. Hartford Ins. Co.,* 383 S.E.2d 2, 6 (S.C. Ct. App. 1989)(internal citations and quotation marks omitted). Whether the conduct in question is sufficiently substantial and unreasonable to be legally cognizable is, in the first instance, a question of law for the court. *Id.* "Where, as here, a plaintiff bases an action for invasion of privacy on 'intrusion,' bringing forth no evidence of public disclosure, it is incumbent upon him to show a blatant and shocking disregard of his rights, and serious mental or physical injury or humiliation to himself resulting therefrom." *O'Shea v. Lesser*, 416 S.E.2d 629, 633 (1992)(citation omitted).

The court finds that simply observing and taking photographs from the street or in front of the Lands' property as alleged by Plaintiffs is not be sufficient to state a claim of invasion of privacy. These allegations are not a blatant or shocking disregard of Plaintiffs' rights. Accordingly, the court dismisses this claim.

### E. Breach of Contract Claim

In their Amended Complaint, Plaintiffs allege that " Green Tree repeatedly failed to or refused to apply the Plaintiffs' payments to the balance of the loan in breach of the terms of the mortgage and note;" "concluded insurances premiums [were] not paid and then force-placed insurance on the home at a considerably higher cost to Mrs. Land and thereby drastically increasing the escrow payment charged to Mrs. Land;" and "repeatedly inaccurately reported the Plaintiffs to the credit bureaus for late payment." (Am. Compl. ¶¶ 84-86). Green Tree contends that Plaintiffs' breach of contract claim fails because Betty Land modified the loan and waived any argument regarding the payments up to that point and credit reporting is not a term of the contract.

Green Tree contends that any breach prior to the loan modification agreement, especially related to the application of payments, would have been addressed by the modification. In the Amended Complaint, however, Plaintiffs allege that "[b]oth before and after the death of Gary

11

Land, Green tree repeatedly failed to refused to apply the Plaintiffs' payments to the balance of the loan in breach of the terms of the mortgage and note." (Am. Compl. ¶ 84). The court finds the allegations are sufficient to state a claim of breach of contract. Accordingly, the court denies Defendant Green Tree's motion to dismiss as to the breach of contract claim.

## IV.  Conclusion

Based on the foregoing, on Defendant's Motion to Dismiss (ECF No. 17) is **DENIED in part and GRANTED in part**. Plaintiffs' claims for negligence, negligent supervision and invasion of privacy are dismissed.

**IT IS SO ORDERED.**

s/Timothy M. Cain
United States District Judge

Anderson, South Carolina
October 31, 2014